**Peggy Jean HUDSON, Appellant,**

v.

**Roger Dale HUDSON, Respondent.**

**No. WD 47374.**

Missouri Court of Appeals,
Western District.

Nov. 16, 1993.

---

2. Missouri Civil Procedure Form No. 14.

Daniel J. Dodson, Jefferson City, for appellant.

Bruce E. Colyer, Osage Beach, for respondent.

Before HANNA, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Peggy Jean Hudson, appeals from the order of the trial court dissolving her marriage to respondent, Roger Dale Hudson.

The parties were married on March 15, 1980, and separated on or about October 18, 1991. There were no children born of the marriage. The only dispute between the parties concerns the division of property.

Roger Hudson was employed as a steam fitter as a member of the Sprinkler Fitters Union from June, 1974 until June, 1989. As a result of his employment, Roger was possessed of an asset known as a "Supplemental Fund" with the National Automatic Sprinkler Industry, which fund is administered by The National Automatic Sprinkler Union. The accumulation of benefits in this fund was the result of Roger's employment from 1974 to 1989.

Roger was also possessed of an asset from his employment known as a "Pension Fund," which was also with The National Automatic Sprinkler Industry. Roger was not entitled to receive any benefit from the pension fund until he reached age 65. The trial court's judgment in regard to the pension fund is not in dispute.

In her first point on appeal, Peggy Hudson argues that the trial court erred by determining that Roger's supplemental fund was a disability benefit rather than a retirement benefit.

The underlying standard of review in this judge tried case is that the judgment of the trial court is to be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies

the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Furthermore, in a court tried case, conflicts in the evidence are for the trial court to resolve and an appellate court considers only those facts and inferences favorable to the prevailing party. *Heigert v. Londell Manor, Inc.,* 834 S.W.2d 858, 863 (Mo.App.1992).

Under the terms of the supplemental fund in question, a covered employee is entitled to benefits when the employee retires, when the employee leaves covered employment, or when the employee becomes totally and permanently disabled to perform union work. Peggy argues that given the nature of the supplemental plan, it was in reality a retirement plan to compensate for lost wages rather than a disability plan to compensate for loss of future earning capacity.

■ Pension or retirement benefits are marital property if the retirement plan is acquired during the marriage. *In re Marriage of Medlock,* 749 S.W.2d 437, 441 (Mo.App.1988). However, disability benefits, to the extent they are compensation for post-dissolution lost earning capacity, are non-marital. *Id.* Missouri applies the "analytical approach" to determine whether awards or benefits are marital or non-marital. *Pauley v. Pauley,* 771 S.W.2d 105, 109 (Mo.App.1989). The focus under the analytical approach is on the loss or damages that a particular award or benefit is intended to remedy. *Id.* Compensation for loss of future earning capacity is considered non-marital disability payment, while compensation for retirement support is considered marital property.

■ The record in the case at bar reflects that in 1989 Roger suffered a hernia injury and that he has not worked as a steam fitter since his injury. Roger had a history of hernia problems and he continued to have medical problems related to the hernia. He had undergone surgery and was in need of further surgery.

When he was able to work as a steam fitter, Roger earned approximately $45,000 a year and up to $54,000 with overtime. At the time of the dissolution, Roger was earning approximately $9,700 a year. Roger testified that because of his injury he would not be able to return to his job as a steam fitter because it required heavy lifting which he was no longer able to perform.

Prior to the dissolution, Roger and Peggy applied for disability benefits under the supplemental plan representing that Roger was disabled. Roger testified that he applied for the supplemental fund benefits because he was disabled. However, subsequent to his separation from Peggy and prior to a determination of his eligibility for benefits, Roger requested of the fund administrators that no benefits be distributed to him.[1] At the time of the dissolution, Roger had not received any benefits from the supplemental fund. Furthermore, there was no evidence produced as to the present value of the supplemental fund. It was established that if Roger took nothing from the supplemental fund until he was retirement age, his benefit would be $541.11 per month.

Roger's supplemental fund was of a hybrid nature. Roger was entitled to benefits from the fund upon regular retirement, upon otherwise leaving his union employment, or upon disability. Upon leaving union employment, other than for disability or regular retirement, a two-year waiting period was required.

■ A question of fact was presented as to whether the supplemental fund benefits were to compensate Roger for future lost earnings or for retirement benefits. If Roger was not disabled, then the benefits would only be available to him as retirement benefits.

There was substantial evidence presented for the trial court to determine that Roger was disabled and that the supplemental fund benefits would compensate him for lost future earning ability. There was medical evidence of his disability. Roger testified that he was disabled, Peggy had signed a request

---

1. There was evidence that the fund administrators had determined that Roger was not sufficiently disabled to be entitled to benefits from the fund. However, Roger testified that he had furnished additional medical reports in regard to his disability. There was no evidence of the reaction of the fund administrators to the additional medical reports.

**408**

for benefits from the supplemental fund stating that Roger was disabled, and his earning potential had been greatly reduced by virtue of his physical condition. Applying the analytical approach, the trial court did not err in classifying the supplemental fund as non-marital.

Peggy's first point is denied.

In her second point, Peggy argues that the trial court erred by awarding Roger a disproportionately higher share of the marital personal property because the trial court "made a finding that the marital property should be evenly divided" and because no factors existed to justify unequal division.

In regard to her claim that the trial court "made a finding that the marital property should be evenly divided," Peggy's reference to the record in support of this statement is inaccurate. Peggy's reference to the record does not support her claim and we have not been able to locate where the trial court made any such finding. Furthermore, the record reflects that the parties were in agreement as to the division of their personal property other than a handgun. The handgun was awarded to Peggy and, otherwise, the division of personal property was in accordance with the agreement of the parties.

When a judgment is entered pursuant to an agreement of the parties, it is not subject to appeal. *Cheffey v. Cheffey*, 821 S.W.2d 124, 125 (Mo.App.1991).

Accordingly, Peggy's second point is denied.

The judgment of the trial court is affirmed.

All concur.