COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


ERIC O. TURNER, SR.
                                                          OPINION BY
v.        Record No. 3026-04-1                    JUDGE ROBERT P. FRANK
                                                        NOVEMBER 22, 2005

IDELL TURNER


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
V. Thomas Forehand, Jr., Judge

Henry M. Schwan for appellant.

Regina Amick (Catherine A. Nelson; Michael J. Woods, P.C., on
brief), for appellee.


Eric O. Turner, Sr., husband, on appeal contends the trial court erred in (1) entering a

Qualified Domestic Relations Order (QDRO) without any prior order granting wife an actual

defined portion of his pension, (2) modifying the final decree in violation of Rule 1:1, and

(3) recognizing/enforcing a pre-divorce oral agreement.  Essentially, husband argues the trial

court created substantive rights in the QDRO that were not awarded in the final decree.  For the

reasons stated, we affirm the judgment of the trial court.

BACKGROUND

The parties married on November 29, 1980, and separated November 15, 1995.  Husband

filed a bill of complaint for divorce in the Circuit Court for the City of Chesapeake, Virginia.

The matter was referred to a commissioner in chancery.  At the commissioner's hearing on

March 11, 1999, counsel for both parties proffered that the parties reached an oral agreement as

to child support, spousal support, and health care coverage.  The stipulation also included

husband's waiver of any interest in wife's pension.  The stipulation continued:

> Mr. Turner has a retirement, and we have decided that the
> numerator in this particular case is fifteen years, and the agreement
> is that Mrs. Turner would be awarded a share of Mr. Turner's
> retirement, based on the total number of years that they were
> married and together, which would be fixed at fifteen, divided by
> the total number of years it takes to get the benefit, times .5; and
> that this retirement would be the subject of a Quadro [QDRO] that
> may be prepared at a later time;

*   *   *   *   *   *   *

> any item pertaining to equitable distribution that has not been
> previously mentioned in this agreement would be waived by both
> parties; and that's the agreement, sir.

Each party, under oath, acknowledged the proffer to be their agreement.

The commissioner recommended "that the [wife] be awarded a share of the [husband's] pension, based on fifteen (15) years of marriage contemporaneous with the employment, as described in counsel's statement contained on page 5 of the Transcript, beginning at line 5 through line 22." This reference is to the stipulation that wife would be entitled to 50% of the marital share of husband's pension. Neither party excepted to the commissioner's report.

The trial court entered a final decree on November 16, 1999, that "confirmed and approved" the commissioner's report and provided *inter alia*:

> It is further ADJUDGED, ORDERED and DECREED that both
> the plaintiff and the defendant are denied equitable distribution
> relief under Virginia Code section § 20-107.3, as amended.

> It is further ADJUDGED, ORDERED and DECREED that Idell
> Turner is awarded a share of the plaintiff's pension based on
> fifteen (15) years of marriage contemporaneous with the
> employment by the plaintiff.

The final decree was not appealed. Upon learning that husband had retired from his employment and was receiving retirement benefits, wife sought to enforce the provisions of the final decree of divorce. Wife filed a petition for a rule to show cause, along with a notice to enter a QDRO, to hold husband in contempt for not paying wife her share of husband's pension.

The court held a hearing on February 4, 2004, on the rule to show cause. Husband testified he retired November 1, 2003, from the Hampton Roads Shipping Association-International Longshoremen's Association (HRSA-ILA). This pension fund was the only one available to him during the marriage.

Over husband's objection, the trial court entered a QDRO awarding wife a portion of husband's retirement:

> 5. RETIREMENT: Pursuant to the parties' oral stipulation and Final Decree of Divorce, former spouse is entitled to receive 25% of Member's monthly retirement benefit until the date on which payments to the Member shall end pursuant to the Plan's provisions or upon the death of the Former Spouse whichever shall first occur. This amount represents 50% of the marital share of Member's retirement benefit. The marital share is determined by a fraction of which the numerator is the number of years married while accumulating said benefit and has previously been stipulated by the parties to be Fifteen (15) years and the denominator is the total number of years Member has accumulated said benefit and is determined to be Thirty (30) years. HRSA-ILA is ORDERED to pay Former Spouse's share directly to Former Spouse.

This appeal follows.

ANALYSIS

Husband contends the trial court, by awarding wife 50% of the marital share of his pension, created substantive rights not awarded in the final decree. Wife answers by maintaining the QDRO simply was an administrative mechanism to effectuate the intent and purpose of the final decree's award. We agree with wife.

The jurisdiction of the court to enter orders effectuating and enforcing its equitable distribution order entered pursuant to Code § 20-107.3 is limited. Equitable distribution orders become final within twenty-one days of entry. See Rule 1:1; see also Fahey v. Fahey, 24 Va. App. 254, 256, 481 S.E.2d 496, 497 (1997). Thereafter, the court's power to modify such orders is governed by statute. Under Code § 20-107.3(K)(4), an equitable distribution order "intended to

- 3 -

affect or divide any pension or retirement benefits pursuant to . . . federal laws . . . [may be modified by subsequent order] only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order." See Wilson v. Wilson, 25 Va. App. 752, 757-58, 492 S.E.2d 495, 498 (1997).

Thus, based on Code § 20-107.3(K)(4), a trial court has authority to reinstate an equitable distribution decree on its docket in order to make the terms of the retirement or pension provisions "effectuate the expressed intent" of the original decree. Code § 20-107.3(K)(4) does not, however, allow a court to modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances. Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994).

> We have previously held that [QDRO] orders that alter critical terms of the [equitable distribution order], such as timing or amount of payments, exceed the authority granted under Code § 20-107.3(K)(4). See, e.g., Fahey, 24 Va. App. at 256, 481 S.E.2d at 497 (holding that the division of the actual value of a Keogh account rather than the agreed value was a substantive change); Decker v. Decker, 22 Va. App. 486, 495, 471 S.E.2d 775, 779 (1996) (holding that reduction in spousal support by amount of mortgage payments on recipient spouse's house was a substantive change).

Hastie v. Hastie, 29 Va. App. 776, 781, 514 S.E.2d 800, 803 (1999).

Here, the QDRO did not alter the critical terms of the equitable distribution order, as the final decree had already established wife's marital share of husband's pension. Code § 20-107.3(G) defines "marital share" as "[t]hat portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties . . . ." This statutory language is mandatory and can be implemented through the use of a simple formula in the form of a fraction. The number of years that the spouse was in the pension plan while in the marriage serves as the numerator and the total number of years in the pension plan serves as the denominator. This fraction establishes the marital share of the pension as defined by the statute. See Primm v. Primm, 12 Va. App. 1036, 1037, 407 S.E.2d 45, 46 (1991). When the parties divorced, husband had not yet retired, thus, the

- 4 -

denominator was unknown. Based on the oral agreement[1] of the parties and the commissioner's recommendation to award wife 50% of the marital share, the trial court confirmed wife's share of husband's pension. Thus, the trial court awarded wife 50% of the marital share of husband's pension. The amount of the marital portion of husband's pension could only be established upon husband's retirement.

While the final decree did not specify that wife would get 50% of the marital portion of the pension, the final decree certainly made the award by affirming the commissioner's recommendation. "Once adopted by the chancellor . . . the actions, findings and recommendations of the commissioner become those of the supervising court and are due considerable deference on appeal." Haase v. Haase, 20 Va. App. 671, 679, 460 S.E.2d 585, 588 (1995). If the final decree did not fix wife's share, then the presence of the formula to ultimately determine the marital share of the pension would be meaningless. Clearly, the parties intended wife would receive 50% of the marital share of the pension. The commissioner recommended that percentage. Neither party excepted to that recommendation. The final decree expressly confirmed

---

[1] Husband argues that under Flanary v. Milton, 263 Va. 20, 556 S.E.2d 767 (2002), the trial court erred in relying on an invalid oral agreement as a basis for the QDRO ruling. Husband correctly notes that Flanary ruled that an oral agreement violated the requirement of Code § 20-149 that an agreement must be in writing and signed by the parties. Thus, the trial court erred in finding the oral agreement valid. However, the oral agreement, as part of the commissioner's recommendation, was confirmed and approved in the final decree. The final decree was not appealed and became the law of the case. "Under such circumstances, the decree became and remains the law of the case." Walt Robbins, Inc. v. Damon Corp., 232 Va. 43, 49, 348 S.E.2d 223, 228 (1986). See Norris v. Mitchell, 255 Va. 235, 240, 495 S.E.2d 809, 812 (1998) (holding that when an unappealed decree becomes "the final order . . . and the law of this case . . . we treat the order as correctly entered"). Therefore, the oral agreement is valid. Having so ruled, we need not address the retroactivity of the 2003 amendments to Code § 20-155, which provide:

> If the terms of such agreement are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed.

and affirmed the commissioner's report.  This decree was not appealed.  Now, husband asks this Court to relieve him of his oral agreement.  We will not do so.

The QDRO simply supplies the denominator in the equation to determine the marital portion of the pension.  Wife's 50% share had already been established in the final decree.

The trial court, in the QDRO, did not create substantive rights, but only effectuated "the express intent of the [final decree]."  Code § 20-107.3(K)(4).  We conclude the trial court did not err in entering the QDRO, and we affirm the judgment of the trial court.[2]

<u>Affirmed.</u>

---

[2] We reject husband's contention that the final decree contains contradictory provisions, i.e., the decree denies equitable distribution and then awards wife a share of husband's pension. From the proffer before the commissioner in chancery, it is clear the parties waived any equitable distribution claim other than to husband's pension.